*Key*, for the plaintiff.

*Killy & Mason*, for the defendant.

---

## GENERAL COURT, OCTOBER TERM, 1798.

### CHASE's Lessee *vs.* The Executors and Legatees of LINDENBERGER.

EJECTMENT for a lot of ground No. 10, particularly described by bounds, containing 9¼ acres, and 33 square perches of land, being part of a tract of land called *Howard's Timber Neck*, lying in Baltimore county.

THE PLAINTIFF'S TITLE. On the 5th of August 1780, *Charles Ridgely*, son of *John*, leased the *above lot of ground* to George *Lindenberger*, (father of the defendants, and under whom they claim,) for 99 years renewable forever, at the *annual* rent of 22*l*. 13s. 0d. sterling money, payable on the 1st day of January yearly. *Charles Ridgely* died in December 1786.

On the 26th of November 1792, *Samuel Chase*, the lessor of the plaintiff, purchased *the reversion in fee simple* (at auction,) from *William M'Laughlin*, trustee of the creditors of the said *Ridgely*, under a decree of the court of chancery. *M'Laughlin* died before conveyance; and

on the 22d of June 1795, *Samuel Chase* obtained a deed from *Randolph B. Latimer*, appointed by the chancellor trustee in the place of *M'Laughlin*. On the 9th of July 1795, *Rebecca Ridgely*, (widow of the said *Charles Ridgely*,) conveyed her life-estate to the said *Chase*, this lot having been assigned to her as her dower in the real estate of her deceased husband.

The defendants claim under a lease from *Charles Ridgely*, therefore *they* cannot controvert his title, *as their lessor.*—1 *Term. Rep.* 758.  2 *Term. Rep.* 698.  If *two* persons claim under the *same title, neither* of them can contravert it.—5 *Term. Rep.* 4.  The lessor of the plaintiff claims also under the *same Charles Ridgely*, and if by his purchase at auction, and his conveyance in consequence thereof, he has *Ridgely's* title of the *reversion*, he is in virtue thereof entitled to the rents *from the time of his purchase*—*Co. Litt.* 151. *b.* 152. *a.* 305. *b.* 3 *Co.* 22. *b.*

The present ejectment is brought under the statute of the 4 *George II. ch.* 28, to recover *five* years rent from the 1st of January 1792, to 1st of January 1797, at 22*l.* 13s. 0d. sterling per year.—3 *Black. Com.* 206.

By this statute, in case of judgment against the *casual ejector*, or *nonsuit* for not confessing lease, entry and ouster, an affidavit (of lessor) is necessary to prove three things, 1st. That half a year's rent was due before the declaration in ejectment was served.  2d. That no *sufficient distress* was to be found upon the demised premises, countervailing the arrears then due.  3d. That the lessor had power to enter. On trial these *three* things must be proved.

The *first* thing to be proved *under the statute* is not denied. The *second* will be proved, (if required.) The *third* is *incident to the reversion;* and if the plaintiff is entitled to it he had a power to re-enter. Entry for nonpayment of rent is *expressly* stipulated in the lease.— 1 *Burr.* 620, for the form of affidavit. *Runn. Eject.* 67. *Sheridan's Pr.* 514.  1 *Burr.* 615, 618, 620.

The plaintiff, to support his ejectment at *common law*, must prove *three* things.—1st. That one year's rent was in arrear before action brought. 2d. That there was no sufficient distress to be found upon the premises. 3d. That the plaintiff made a lawful demand of the rent in arrear.

The defendant's defence. That *Charles Ridgely*, (son of *John*,) the lessor *after* the lease, cut down *a dam*, made *before* the lease, to convey water through the *demised premises*, and thereby turned away the water, and prevented it from passing through the lot.

To this defence *four* objections occur.(a)  *First.* There is no mention of the water in the lease.  *Quere*—Is any evi-

(a) These notes were made by the lessor of the plaintiff.

Oct. 1798.

Chase's lessee
vs.
Lindenberger

dence admissible to prove that the lessee was to have the benefit of the water? 2 *Blk. Rep.* 1249. 2 *Fonblanc's Treat. of Eq.* 188, in note, where all the cases on the subject are collected. 3 *Atk.* 384. *Espinasse*, 780, 781.

*Second.* If evidence is legal, and the fact is proved, yet the *remedy* by the lessee was by action on the case against the *lessor* for *damages.*

An action *on the case* lies for diverting a *water course,* but the plaintiff, to maintain *such* action, must shew a *right* to such water course. The action is maintainable on *this* ground, that the plaintiff has *a property* in the *water course.*—*Carth.* 116. 1 *Ld. Raym.* 248, 452. 2 *Ld. Raym.* 1402. 1 *Com. Dig.* 59.

*Third.* If *Charles Ridgely,* (son of *John,*) the lessor, did cut down the dam on *Ridgely's Delight,* and thereby turned the water from running to lot No. 10, the leased premises; yet *such act* is not sufficient, in law, to *extinguish,* or to *suspend* the rent.

1st. If the *whole of the leased premises* were evicted (or recovered at law,) by a *stranger,* by *elder title,* the *whole* rent is *extinguished,* or *destroyed,* and can *never revive.*— *Co. Litt.* 147. *b.* 272. *b.* 3 *Co. Rep.* 22. *a. b.* 10 *Co.* 128. *a.* *Salk.* 65. This decision is grounded *upon the defect in the lessor's title.*

If no *express* covenant in the lease, yet the *law implies* one by the lessor, that the lessee shall enjoy his lease *against the lawful entry and eviction of any man.* The lessee, to justify nonpayment of the rent, must shew that he was evicted by an *elder title.*—*Vaugh.* 118. *Law of Cov.* 176. *Vin. Ab. tit. Rent,* 509, *pl.* 4. *Fortes.* 306. *Cro. Eliz.* 52.

2d. If PART of the leased premises is *evicted,* or *recovered* at *law* by a *stranger,* by *elder title,* there shall be an *apportionment,* or division of the rent, by the jury, who shall try the cause.—*Co. Lit.* 147. *b.* *Cro. Ja.* 310. 3. *Vin. Ab. tit. Apportionment,* 12, *pl.* 16, c. 17, *pl.* 1, 2. And the reason for *apportionment* is, because, though *part* be taken away, yet *some part* remains, and there is *a part of the consideration money* remaining due to the lessor; and if there was *no apportionment,* the *act of the law,* in the recovery by the *stranger,* would do *wrong* to the lessor.—*Gilb. L. E.* 283.

3d. If the *lessor* shall enter and evict (oust or expel,) the *lessee* of *any part* of the leased premises, *such act suspends* the *whole* rent *during such eviction;* and there shall be *no apportionment* of the rent.—*Co. Lit.* 148. *a. Ld. Raym.* 77. This decision is founded on these reasons: 1st. The law will not allow any man to benefit himself by his own wrong, and therefore the lessor shall not apportion the rent by his own wrongful conduct. 2d. The con-

tract for the rent is *entire;* and the lessor by his own act deprives himself of the benefit of such contract. 3d. The jury ought not to divide the rent in favour of the lessor, because the lessee contracted to pay the rent for the *whole* premises, and probably he would not have *contracted* for *one part without the other.* The loss of the rent is a proper punishment on the lessor for his violence and injury to his lessee.—*Gilb.* *Evid.* 243. 5 *Coke* 113. *b.* *Co. Lit.* 319. *a. Dyer* 212. *b.* 18 *Vin. Ab. tit. Rent,* 513, *pl.* 2. 12 *Vin. Ab. tit. Extinguishment,* 456, *pl.* 1. 457. *pl.* 7. 1 *Vent.* 277. *Hob.* 190, 326. *Styles,* 432, *S. C. Hutt.* 6, *Esp.* 235.

The reason why a tortious entry by the *lessor* suspends the *whole* rent is, because the rent by the original contract is payable out of, and as a retribution for the *whole* demised premises; therefore when the lessor makes a tortious entry into part of the land, the lessee shall pay nothing for the residue; the lessor not suffering the *lessee* to enjoy that for which the rent was payable by the contract.—*Gilb. Treat. on Actions of Debt,* 429, 430.

To *suspend* rent, *three* acts or circumstances must concur: 1st. A *tortious* entry by the lessor. 2d. An eviction, expulsion, ouster, or putting out, (for they are all synonimous terms and all mean an *amotion of the possession of the lessee, by the lessor.* 3d. The holding the lessee out of possession, or not permitting him to re-enter—*Cowp.* 243, *Huntt vs. Cope. Perkins,* sec. 825. *S. P. Vent.* 67. *L. Raym.* 369. *Espin.* 235, 262, 307.

The *tortious entry alone is no bar.* The *expulsion* makes the *first part* of the bar, and the *holding out* the rest.— Per *Holt, Comb.* 380.

What *fact* constitutes a *tortious entry by the lessor,* or an *eviction,* or a *holding out,* of the lessee, is a matter of *law,* to be decided by the court—18 *Vin. Ab. tit. Rent.* 504, *pl.* 11.

The taking away a pent-house fixed to the premises, is a *trespass,* but no *suspension* of the rent.—2 *Jones,* 148. *S. P. Cowp.* 243. *Cro. Eliz.* 341. *Gob'is.* 6, 125, *pl.* 15.

It was formerly doubted whether the lessor's entry wrongfully into *part* of the lands demised did not *suspend* the *whole* rent during *such tortious entry,* or whether the rent ought not to be *apportioned.* But the law is *now settled,* that *such* tortious entry suspends the *whole* rent, *until the tenant be restored to the whole possession.* For if an *apportionment* were allowed in this case, it would be in the power of the lessor to *resume* any part of the land *against his contract,* and thus by taking *that* which lies most convenient for the tenant, render the *remainder,* in effect, useless—2 *Bac. Ab.* 450. 4 *Bac. Ab.* 369—and it would encourage the landlord to injure or disturb his tenant.

Oct. 1798.

Chase's lessee
vs.
Lindenberger

It cannot be proved that *Charles Ridgely*, in his life-time, (or any person claiming under him,) ever made a *tortious entry* on the premises. If there was *no tortious entry*, there could not be *any eviction*; if there had been a *tortious entry*, yet there never was any *eviction*; and if there was *both a tortious entry* and *an eviction*, yet there never was any *holding out* of the lessee. To *suspend* the rent the defendants must prove that all the *three* acts were committed by *Ridgely*, or those who claim under him, and they cannot prove *either* act; *ergo* they have failed in their defence.

The rules of pleading are founded in good sense; and a *uniform mode* of pleading is *strong evidence of the law*—3 *Wood*, 53 *note*. *Cunningham's preface to Heath's maxims*, 4.

If to an action of *debt*, or *covenant*, by *lessor* against the *lessee*, for the recovery of *rent*, the lessee sets up *eviction* by his *lessor*, in bar of the action, his plea should properly contain *three facts*, that the lessor tortiously entered and evicted him, and kept him out of possession. If the lessor denies these facts, he must reply, "that he did not evict or *expel the lessee*," and issue must be joined thereon. If the facts in the plea are true, but the lessee *after* the eviction re-entered and *enjoyed the premises until after the rent became due*, the lessor, to destroy this plea in bar, may reply *such re-entry and enjoyment*, and issue must be taken thereon; and if found for the lessor will maintain his action—*Vide Rastal's Ent.* 175. *Bro. Red.* 231, 260. 2 *Mod. Int.* 135. 1 *Saund.* 203. *Pl. Genl.* 252, 278, 279. *Thom.* 173, 220. *Clift.* 150. *Lill. Ent.* 180.

Whatever facts plead to an action of *debt*, or *covenant* for *rent*, are sufficient in law to bar *such* action, the *same facts* may be given *in evidence* to defeat an action of ejectment, but no *other* or *less* facts can have that effect. If this was not the law, the *right* of the parties would depend on the *species* of action; and in *one* the plaintiff would recover, and in *another*, for the *same cause* of action, he would be defeated.

Let us suppose that *Charles Ridgely*, in his life-time, (or the present plaintiff,) had brought an action of *debt* for the recovery of the *rent in arrear*, and that the defendants had plead eviction, which would run in these words: "That *after* the demise, and *before* any rent by that demise became due and payable to the plaintiff, the said plaintiff, on the ——— day of ———, with force and arms, entered into *parcel* of the premises, and the defendants from their possession thereof *ejected, expelled and amoved*, and the said defendants so from thence until—*kept out*, &c. The replication is, "that the plaintiff did *not re-enter, nor expel and amove in manner and form*," &c. and issue. *Lilly's Ent.* 180. *Carth.* 32. 2 *Mod. Entr.* 285.

Would not the defendants be obliged to prove the truth of their plea? Would evidence of some act done by the plaintiff *off the land*, from whence *consequential* damage arose to the defendants, support the plea? Would *such act* sustain any *part* of the plea? The defendants must *prove* all the facts in the plea to be true; and for that purpose they must prove first, *a tortious or wrongful entry on the land by the plaintiff*. If the defendants proved *this*, and *no more*, they *must* fail, because they would then only prove *a trespass*, for which the law gives a proper and sufficient remedy by action of *trespass*. If the fact could be proved that *Charles Ridgely*, the lessor, cut a dam *off the lot*, by which the water was turned from it, and thereby the benefit of the water was lost by the lessee, yet *such act* would be no *entry* on the lot, much less a *tortious one*. The distinction is well known, that where the *injury is consequential*, an action *on the case* lies; and that where the injury is *immediate*, and *not consequential*, an action of *trespass* lies.—*3 Blk. Com.* 123. *2 Term Rep.* 231. But the defendants, in the *second* place must prove, that the plaintiff *evicted*, or *expelled*, or *amoved* them from the possession of the land; and this fact is the *gist*, or *substance* of the *defence*. The *third* fact, that the plaintiff still *held or kept the defendants out of possession*, arises out of the *second fact*, and would be *presumed*.

4th. If rent was *suspended*, yet it was *revived* by the subsequent re-entry and enjoyment of the premises by the lessor, until after the rent became due.

1st. If the lessee, *after* eviction, re-enters and enjoys the leased premises until after the rent becomes due, by such acts the rent will be *revived*. If a *lessor* evicts his *lessee*, it is in his option to be *wholly* discharged from all *future* rent; or, if for his *benefit*, he *may re-enter* and continue his lease.—*Gilb. Treat. on action of debt*, 429, 430.

2d. There is a plain and great difference between the *suspension*, and the *extinguishment* of a *right*. A *suspension* of a *right* is only a *temporary* obstruction to the remedy for the recovery thereof. An *extinguishment* of a *right* is a *perpetual bar*.

To apply this distinction to the present case. The *right* to recover *rent* may be *suspended*, or *extinguished*. Rents are said to be *suspended*, or not in *esse for a time*, and in the law phrase, *"et tunc dormiunt;"* as where the lessor *enters and evicts*, or *expels* the lessee of *any part* of the leased premises; *such* acts will *suspend* the whole rent *during the time of such eviction or expulsion*.

But in *this case* the rent may be *revived*, or *awakened*; as where the lessee, *after* tortious entry and *eviction*, or expulsion, re-enters and enjoys the premises *until after* the rent becomes due. Rents are said to be *extinguished*,

or not in *esse,* or extinct, or dead, or lost forever, and in the law phrase, *"et tunc moriuntur,"* and will never *revive;* as where the *whole* premises are evicted, or recovered at law, by a *stranger* by an *elder title.* If only *part* of the premises are evicted, or recovered, at law, by a *stranger,* by an *elder title,* there will be an *apportionment.* *Bro. Ab.* 21, *pl.* 314. *Gilb. Evid.* 243. *Co. Litt.* 147. *b.* 313. *a.* 11 *Vin. Ab. til. Extinguishment,* 456.

In ejectment, on condition of re-entry for non-payment of rent, proof of actual entry and ouster is not necessary, nor is it necessary to prove *demand* of rent *since the statute of* 4 *George II. ch.* 28, which gives ejectment *without demand or re-entry.* The law was so before the statute. —*Runnington,* 21. *L. Ray.* 750. *S. C. Salk.* 259. 1 *Vent.* 332. 1 *Ncls. Ab.* 654. 3 *Blk. Com.* 206, *bottom,* 233. *Dougl.* 469. *Sheridan's Practice,* 514 *to* 517.

STATUTES RESPECTING RENTS. Statute 32 *Henry VIII. ch.* 37, executors of tenants in fee of rents shall have debt or distress for the arrears—husbands seized in right of their wives, or tenant *per autre vie,* after the death of the wife, or *cestui que vie* may distrain or have debt for arrears.—*id. s.* 3.

Statute 4 *Ann. ch.* 16, *s.* 10.—Tenants shall not be prejudiced by payment of rent to a *grantor* before notice of the grant.

Statute 8 *Ann. ch.* 14.—Goods liable to distress not to be taken in execution without paying the arrears.—Action of debt given for arrears upon a lease for *life.*

Statute 4 *George II. ch.* 28.—Tenants holding over after demand, to pay double rent.—Ejectment may be delivered where half a year's rent is in arrear.

Statute 11 *George II. ch.* 19.—Tenants giving warning, and not quitting, to pay double rent. Crops growing may be distrained. Where the demise is not by deed, rent may be recovered by an action on the case for use and occupation. Penalty on tenants concealing ejectments from their landlords. Landlords may be made defendants with or without tenants.

Note. In the special verdict in case of *Calvert's lessee vs. Eden, et al.* (May 1789,) 2 *Harris & M'Henry's Rep.* 290, it is found that this last statute extends to Maryland.

The following *point* was submitted for the court's opinion thereon, to wit:

Whether the plaintiff, to support the present ejectment under the statute *of* 4 *George II. ch.* 28. entitled, "An act for the more effectual preventing frauds committed by tenants, and for the more easy recovery of rents, and the renewal of leases," is obliged to prove, on the trial, the three following facts:

1st. That he, the lessor of the plaintiff, demanded the rent on the demised premises.

2d. That the lessor of the plaintiff demanded the rent on the day on which it became due in virtue of the lease by *Charles Ridgely,* son of *John,* to *George Lindenberger,* on the 5th of August 1780.

3d. That the lessor of the plaintiff's demand of the rent was for the exact sum due for the rent.

*Cooke,* for the plaintiff.

*Martin,* (Attorney General,) for the defendants.

The point was waived by the attorney general, and judgment was entered for the plaintiff for possession, and costs.